SMITH *v.* THE CENTRAL RAILROAD & BANKING COMPANY.

1. The chief officer of the department of the railroad service to which the plaintiff belonged having, by an official circular, prescribed the plaintiff's duties, amongst which were the following: "He will compile the monthly rate-sheets and see that all business of this branch is properly conducted," and the plaintiff having, after the promulgation of this order, compiled the monthly rate-sheets for several years, during which he received his regular compensation as an employee of the company, such compensation is to be taken as covering his services in compiling the rate-sheets as well as all other services laid down in the circular.
2. There was no error in granting a nonsuit.    *Judgment affirmed.*
    January 11, 1891.

Master and servant. Contracts. Nonsuit. Before Judge HARDEN. City court of Savannah. July term, 1891.

Smith sued for $1,735 alleged to be due him for compiling rate-sheets. His declaration counted on an account, on a *quantum meruit*, and for money had and received. To the grant of a nonsuit he excepted. His testimony was, in brief, the following:

The amount of $1,735 was due me for compiling rate-sheets on July 1, 1887. The defendant has collected

from other roads $1,085 of this amount. I have never been paid for any of these rate-sheets though I have demanded payment. The dates (upon a bill shown) at which I did the work and at which I rendered the bills to defendant, are correct. The items mentioned prior to March 9, 1887, were for work prior to that date, and the items charged for since March 9, 1887, aggregate $90. I was an employee of defendant during July and August, 1880, and up to the rendition of this bill, in the general passenger department under Whitehead. He issued a circular to the employees in the office, of which I was furnished with a copy at the time I took service in that department. My duties as mentioned in this circular, are as follows : "Mr. E. H. Smith, under the supervision of Mr. Dreese, will have charge of the clerks in the passenger department; will assist with the correspondence and look after division percentages and passenger rates. He will compile the monthly rate-sheets, and see that all business of this branch is promptly(?) conducted." In November, 1880, I presented a bill for $40 for compiling Savannah rate-sheets, leaving out defendant's proportion. Before doing so, Thomson, the auditor, asked me why I did not send in my bill for compilation fees, and I told him I would do so. I called in, and he told me McIntyre (defendant's book-keeper) wanted to see me. I went to him, and he said, " We have not reduced your salary, and I do not think you should send in this bill." I told him there was not one cent of defendant's money in the bill, "you collected it." He then said I did not have much policy about me; had I consulted him about these sheets he would have advised me to leave it to the gentlemen I promised to give the sheets to, Rogers and Purse, who were then compiling and receiving fees. I explained to him that when I promised these sheets I was ticket agent of defendant, but was now a clerk just the same

as Purse and Rogers. He said there was not much use talking the matter over longer, that I could not convince him and he could not convince me. I then told him that if he thought I was taking the company's time I would compile at night, but he said the night hours were the company's too, and that they could compel me to work at night if they wanted to. He said it was a small bill which he could readily pay, but that he refused to pay it on principle, and even admitting that it was due by the company. He never said what the principle was. On account of some personal grounds, the taking away of the sheets from these gentlemen, he refused to pay it. I told him I had consulted him about taking the sheets away from them and that he approved my course, but he said he did not remember it. Thomson afterward told me if I would take the bill to Whitehead and get him to approve it, it would be paid. I took it to Whitehead and left it with him, and the following morning he called again and said he had seen McIntyre about the bill, who said I had not consulted him about taking the sheets away from these clerks I had promised them to. I told Whitehead that I did consult McIntyre about it. Afterward Whitehead told me that McIntyre had stated he would pay the bill if he (Whitehead) approved it; he told me, as a friend, that he would advise me not to press payment of the bill, that if I did it would injure more than help me. I left under protest. Whitehead declined to approve the bill on the ground that McIntyre preferred that he would not. Before I did this work I was general ticket agent and compiler. When I came into Whitehead's office my duties were defined by that circular, but that portion which refers to compiling rate-sheets he had no control over; it was joint rate-sheet work, and I was working under contract. The contract was my original contract (in parol) which was not changed, and which was made in May, 1871, bv me as

general ticket agent, with the general passenger agents of the Atlantic & Gulf and the Savannah and Charleston railroads. Whitehead did not pay bills in the passenger department, but they were paid upon his approval. He did not tell me in 1880, when I presented the first bill, that he would not pay them because it was a part of my duties. Being in the passenger department from 1861 to 1880, I would not have thought, from reading the circular, he meant for me to do the work, but only that he intended it as a division of the work. Rogers was assigned to certain work, was not able to do it, had to get assistance, and Whitehead had to give it. I did the work assigned me in the circular, but with expectation of compilation fees. Do not know whether I could have got the bill paid without Whitehead's signature, but went to him to conform to the wishes of Thomson; do not think anybody's approval was necessary for me to get paid on the bill, but Thomson told me to go to Whitehead for him to approve it, and then he would pay it, and I complied with his wishes; I knew that if McIntyre would allow him, he would pay it without Whitehead's signature. McIntyre refused positively to pay it, but Whitehead merely said that as a friend he would advise me not to press payment as it might injure me. I presented a bill after that (in March, 1883) for the Columbus sheets to Thomson, but he did not pay it; said he could not without its being approved. I did not ask Whitehead to approve it, but just kept it. I have continued to do this work since that time. I never put in a bill for the Savannah and Macon sheets after the first bill was declined, until October 17, 1887, when the compilation of the sheets was taken away from me. The Macon and Savannah rate-sheets were included in the same bill and were in the same condition.

Just prior to the issuance of this circular I was compiler of the Savannah sheets in addition to being general

ticket agent. Commenced to compile them in December, 1877. Finding that other compilers were charging fees, I went to McIntyre and told .him I was going to charge them and was going to give it to my chief clerk Rogers; this must have been six months previous to Whitehead's coming here. After I turned the fees over to Rogers, and while I was general ticket agent, I know that at one time $10 came through my hands and I turned it over to him. At the time Whitehead took charge of the office on June 3, 1880, I was compiling the sheets; and my name remained as compiler all the time on the Savannah sheet from December, 1877, to July, 1887, my name appearing both as general ticket agent and as compiler. When Whitehead took charge I was reduced to the ranks, but my pay was not reduced. It was before the issuing of the circular that I spoke to McIntyre about taking the sheets from Rogers and Purse. I went to Whitehead and told him I was going to take exclusive charge of the compilation of the Savannah sheets, then went to Thomson and told him and then told McIntyre, and all of them approved my course to the best of my knowledge and belief; but McIntyre seemed to have forgotten it and based his refusal entirely on the ground of not being consulted. The character of my work was to see that ticket agents were furnished with rates; in fact, the passenger department was left to me. That was separate and distinct from compiling rate-sheets, which probably took three or four hours a month of my time, and there was no other man in defendant's employment in 1880 that could compile them as well as I could. Neither McIntyre nor Whitehead declined to pay on the ground that this was a part of my regular work. While compiling the sheets the only two bills I presented were those in 1880 and 1883, but I presented another in October, 1887, after I got through. I had no other conversation with McIntyre or Thomson about

the bills, but in 1885 told Whitehead I did not think it right for defendant to be charging fees to the other lines as the compiler did not receive anything. In October, 1887, I took a bill to Whitehead, and he got very indignant and said he would not approve it. I told him I did not come to ask his approval but merely as a matter of courtesy, and that I was going to present the bill to Thomson for payment. He said there was no use presenting it, because he and McIntyre had arranged that I should not receive any compensation for that service. I told them I did not feel bound by this, as they did not let me know anything about it, etc. So I presented the bill to Thomson, and he said it required the signature of the comptroller. He ignored Whitehead altogether. He said if I had quit the service of defendant he would advise me to sue for it, and that the reason I had been refused payment of the first bill was on account of Rogers and Purse complaining to McIntyre that I had taken the work away from them. There is due me on the bill from January 1, 1886, to the end of my work $427.50, and from October 19, 1886, to the end, $225 is due me. I am not now employed by defendant. I previously filed a suit in this case, but it was withdrawn on December 17, 1890, and on the following day I was requested to hand in my resignation. I claim that defendant owes me this money on a contract made with me prior to 1880. The reason why I did not present any other bill after March, 1883, was because I knew they would not pay it, and probably were I to present it I would be discharged. Do not know whether any one received pay for compiling rate-sheets after July 13, 1880, when this paper was issued by Whitehead. I compiled all which were compiled in my office after that, with the exception of July, 1887; that a clerk in the office assisted me to compile, or compiled, but I have charged for it. The reason why I supposed they would

not pay the bill was because McIntyre had once declined to pay it, and when he said a thing he always stuck to it.

Other testimony need not be here stated.

O'CONNOR & O'BYRNE and C. N. WEST, for plaintiff.

LAWTON & CUNNINGHAM, for defendant.